## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

| | | |
|---|---|---|
| KOLBY DUCKETT, | ) | |
| DAVID SCHILLING, and | ) | |
| DAVID HOLLOWAY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Docket No. 1:19-cv-00295 |
| | ) | |
| CHIEF BRIAN HICKMAN, individually | ) | |
| And in his official capacity as the Police | ) | JURY DEMANDED |
| Chief of the City of Collegedale and | ) | |
| | ) | |
| TED ROGERS individually and in his | ) | |
| official capacity as the City Manager | ) | |
| of the City of Collegedale and | ) | |
| | ) | |
| THE CITY OF COLLEGEDALE, TENN., | ) | |
| A municipality. | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENA PURSUANT TO FED.R. CIV. P. 45(d)(3)(iii)

Comes Curtis Bowe (Bowe) and submits the following Memorandum in Support

of his Motion to Quash Subpoena filed pursuant to Fed. R. Civ. P. 45(d)(3)(iii).

### BACKGROUND

Bowe is a Chattanooga based attorney licensed to practice before this Court and

the Courts of Tennessee. He is also a reserve police officer with the Collegedale,

Tennessee Police Department.

The case before the Court involves, among other things, a question of whether the

City of Collegedale, or the Collegedale Police Department, implemented a quota system

for arrests and prosecutions within its jurisdiction and, if so, the impact of such quota

system on the arrest and prosecution of offenders. While functioning as a reserve office,

various persons associated with the City of Collegedale or the Collegedale Police Department, including particularly other police officers, asked Bowe his legal opinion of the constitutionality and propriety of a quota system.  The questioners each knew that Bowe as an attorney and expected him to give them his legal advice even though he was, at all times material, functioning as a reserve police officer and not strictly as an attorney.  Bowe answered questions, giving each questioner his legal opinion.

Bowe considered *each* conversation to be protected by the confidentiality rules he was required to follow as an attorney.

On August 14, 2020 Bowe was served with the deposition subpoena he now seeks to quash.  He was notified that the questioning at the deposition would include his conversations about a quota system.  None of the persons who communicated with Bowe have waived their confidentiality privilege.  Bowe believes that his discussions of a quota system are privileged.  In the alternative, he believes that disclosing the content of these discussions in a deposition creates an appearance of impropriety.

The procedure for resolving this issue is provided in <u>Fed. R. Civ. P</u>. 45(d)(3)(iii):

> **(3)** Quashing *or Modifying a Subpoena.*
>
> **(A)** When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>
> **(i)** fails to allow a reasonable time to comply;
>
> **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
>
> **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> **(iv)** subjects a person to undue burden.

*a) The Tennessee Rules of Professional Conduct govern this issue.*

In this Court, for example, "[a] district court's authority to disqualify attorneys for unethical behavior is derived from two sources. First, attorneys are governed by the local rules of the court in which they appear. Local Rule 83.6 of the United States District Court for the Eastern District of Tennessee, provides: The Code of Professional Conduct adopted by the Supreme Court of Tennessee is hereby adopted as the rules of professional conduct insofar as they relate to matters within the jurisdiction of this court. E.D. TN. LR 83.6. Thus, attorneys that appear in this Court are governed by the Tennessee Code of Professional Responsibility ("Code")." Cavender v. U.S Xpress Enters., 191 F. Supp. 2d 962, 965 (E.D. Tenn. 2002)

*b)      The Tennessee Rules of Professional Conduct prohibit the disclosure of confidential information communicated within an attorney-client relationship.*

As a licensed Tennessee attorney, Bowe is subject to the following:

Tennessee Rule of Professional Conduct 1.6. Confidentiality

**(a)** A lawyer shall not reveal information relating to the representation of a client unless:
**(1)** the client gives informed consent;
**(2)** the disclosure is impliedly authorized in order to carry out the representation; or
**(3)** the disclosure is permitted by paragraph (b) or required by paragraph (c).
**(b)** A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary:
**(1)** to prevent the client or another person from committing a crime, including a crime that is reasonably certain to result in substantial injury to the financial interest or property of another, unless disclosure is prohibited or restricted by RPC 3.3;
**(2)** to prevent the client from committing a fraud that is reasonably certain to result in substantial injury to the financial interests or property of another and in furtherance of which the client has used or is using the lawyer's services, unless disclosure is prohibited or restricted by RPC 3.3;

**(3)** to prevent, mitigate, or rectify substantial injury to the financial interests or property of another that is reasonably certain to result or has resulted from the client's commission of a fraud in furtherance of which the client has used the lawyer's services, unless disclosure is prohibited or restricted by RPC 3.3;
**(4)** to secure legal advice about the lawyer's compliance with these Rules;
**(5)** to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client; or
**(6)** to detect and resolve conflicts of interest arising from the lawyer's change of employment or from changes in the composition or ownership of a firm, but only if the revealed information would not compromise the attorney-client privilege or otherwise prejudice the client.
**(c)** A lawyer shall reveal information relating to the representation of a client to the extent the lawyer reasonably believes disclosure is necessary:
**(1)** to prevent reasonably certain death or substantial bodily harm;
**(2)** to comply with an order of a tribunal requiring disclosure, but only if ordered to do so by the tribunal after the lawyer has asserted on behalf of the client all non-frivolous claims that the information sought by the tribunal is protected against disclosure by the attorney-client privilege or other applicable law; or
**(3)** to comply with RPC 3.3, 4.1, or other law.
**(d)** A lawyer shall make reasonable efforts to prevent the inadvertent or unauthorized disclosure of, or unauthorized access to, information relating to the representation of a client.

<u>Tn. Code Ann.</u> § 23-3-105

No attorney, solicitor or counselor shall be permitted, in giving testimony against a client or person who consulted the attorney, solicitor or counselor professionally, to disclose any communication made to the attorney, solicitor or counselor as such by such person during the pendency of the suit, before or afterward, to the person's injury.

c)    *Bowe's communications with his co-workers created an attorney-client relationship or a prospective attorney-client relationship.*

---

**4 |** P a g e

In Tennessee, the confidentiality rule applies to attorney-client relationships and prospective attorney- client relationships.[1] Fundamental to the resolution of the issue before the court is whether an attorney-client relationship existed between Bowe and his co-workers. Tennessee Courts often cite <u>Jackson v. State</u>, 155 Tenn. 371 (1926) which held that "[t]he object of the rule is, that the professional intercourse between attorney and client should be protected by profound secrecy. It is not necessary to the application of this rule, as was held in some of the old cases, now overruled, that a rent should be pending or anticipated (1 Greenl. on Ev., 240, note), nor that there should be a regular retainer or the payment of fees. 1 Greenl. on Ev, sec. 241. But he must be applied to for advice or aid in his professional character, and that in relation to some act past, or right, or interest in existence. The rule has no reference to cases like the one before us, where abstract legal opinions are sought and obtained on general questions of law, either civil

---

[1] <u>Tenn. Sup. Ct</u>. R 8, Rule 1.18 Prospective clients.
**(a)** A person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
**(b)** Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal that information, except as RPC 1.9 would permit with respect to information of a former client.
**(c)** A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that prospective client in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).
**(d)** When the lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if:
**(1)** both the affected client and the prospective client have given informed consent, confirmed in writing, or:
**(2)** the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and
**(i)** the disqualified lawyer is timely screened from any participation in the matter; and
**(ii)** written notice is promptly given to the prospective client.
**(e)** When no client-lawyer relationship ensues, a prospective client is entitled, upon request, to have the lawyer return all papers and property in the lawyer's possession, custody, or control that were provided by the prospective client to the lawyer in connection with consideration of the prospective client's matter.

or criminal. In such cases no facts are, or need be disclosed implicating the party; and so there is nothing to conceal of a confidential nature." Jackson v. State, 155 Tenn. at 376.

In the case at hand, Bowe's co-workers did not pay a fee nor were they seeking information about a general question of law; rather, each sought advice concerning a specific issue, based upon past and present facts, about which each was justifiably concerned.

More recently, the creation of an attorney-client relationship was addressed in slightly different terms: "See Tenn. Sup. Ct. R. 8, RPC 1.18, cmt. 2 ("Duties to Prospective Client") (explaining that "a person who communicates information unilaterally to a lawyer, without any reasonable expectation that the lawyer is willing to discuss the possibility of forming a client-lawyer relationship, is not a 'prospective client' . . . ."); see also Togstad v. Vesely, 291 N.W.2d 686, 693 n.4 (Minn. 1980) (stating that an attorney-client relationship arises when a person "seeks and receives legal advice from an attorney in circumstances in which a reasonable person would rely on such advice") (citations omitted) (internal quotation marks omitted)." State v. Jackson, 444 S.W.3d 554, 559 (Tenn. 2014).  Bowe's co-workers were understandably concerned about a quota system and, if such system exists, its impact on their jobs and lives.  If a quota system exists in Collegedale, it could negatively impact the prosecution of purported offenders brought before the Collegedale Court and could even impact the qualified immunity rules[2] that otherwise protect police officers from civil liability.

The application of the two authoritative opinions cited above demonstrate that the conversations were and are privileged:

---

[2] "Qualified immunity strikes a balance between compensating those who have been injured by official conduct and protecting government's ability to perform its traditional functions." Wyatt v. Cole, 504 U.S. 158, 167, 112 S. Ct. 1827, 118 L. Ed. 2d 504 (1992).

1.  Bowe's questioners applied for advice in his professional capacity.

2.  The issues discussed were not general propositions of law but represented specific inquiries about the constitutionality of a quota system.

3.  The questions concerned a past and present factual issue.

4.  Each discussion required the disclosure of facts relating to a quota; facts generating an expectation of confidentiality.

5.  Each questioner relied upon the advice given.

Because these criteria exist, Bowe's communications are privileged, and the subpoena should be quashed.

### d) *Requiring Bowe to disclose confidences in a deposition may also represent an appearance of impropriety.*

In Clinard v. Blackwood, 46 S.W.3d 177 (Tenn. 2001) the Court held that when an attorney changes firms and his new firm is adversarial to the attorney's former client, the new firm may avoid vicarious disqualification if it implements screening procedures but that despite rebutting the presumption of shared confidences, the firm may still be disqualified because of an appearance of impropriety.

"The history of this standard can be traced to 1932, when the ABA concluded that '[a]n attorney should not only avoid all impropriety but should likewise avoid the appearance of impropriety'"[3] In 1969, the ABA alluded to this ethical obligation several times in its enactment of the Model Code of Professional Responsibility. Initially, 'the appearance of impropriety [standard] was meant to serve as an aspirational principle to

---

[3] Bruce A. Green, Conflicts of Interest in Legal Representation: Should the Appearance of Impropriety Rule Be Eliminated in New Jersey-Or Revived Everywhere Else?, 28 Seton Hall L. Rev. 315, 315 (1997) (internal quotes omitted) (quoting ABA Comm. on Prof'l Ethics and Grievances, Formal Op. 77 (1932)).

guide lawyers in the exercise of their independent judgment,' rather than a disqualification rule.[4] Some courts nevertheless began to use the the appearance of impropriety standard 'as a catch-all to address the [Model] Code's perceived shortcomings.'[5] Moreover, early in its creation, the appearance of impropriety standard was used by courts to address conflicts of interest with both government and private lawyers."[6] Legal Ethics-Attorney Conflicts of Interest-The Effect of Screening Procedures and the Appearance of Impropriety Standard on the Vicarious Disqualification of a Law Firm Clinard v. Blackwood, 46 S.W. 3d 177 (Tenn. 2001), 70 Tenn. L. Rev. 251, 262-263.

Compelling Bowe to disclose confidences in a deposition violates the appearance of impropriety standard.

## CONCLUSION

The right to insist upon confidentiality belongs to those who questioned Bowe in confidence about a Collegedale quota system. *The duty to protect their expectations of privacy rests with Bowe* as a Tennessee attorney. Believing that the discussions are privileged, Bowe asks the Court to quash the deposition subpoena.

RESPECTFULLY SUBMITTED this 3rd day of November 2020

**CAVETT, ABBOTT & WEISS, PLLC**

By:     */s/ John C. Cavett, Jr.*
John C. Cavett, Jr., TN BPR 09388
Attorney for Curtis Bowe
801 Broad Street, Suite 428
Chattanooga, TN 37402
(423) 265-8804
john@cawpllc.com

---

[4] Id.
[5] Id.
[6] Id.

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2020, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by U.S. Mail. Parties may access this filing through the Court's electronic filing system.

/s/ John C. Cavett