```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF TENNESSEE
                          AT CHATTANOOGA
```
------------------------------------------------------------
KOLBY DUCKETT, DAVID SHILLING, and  )
DAVID HOLLOWAY,                     )
   Plaintiffs,                      )
                                    )
VS                                  ) CASE NO.  1:19-CV-002905
                                    ) JURY DEMAND
CHIEF BRIAN HICKMAN, Individually,  )
and in His Capacity as the Police   )
Chief of the City of Collegedale,   )
                                    )
TED ROGERS, Individually, and in    )
His Capacity as the City Manager of )
the City of Collegedale,            )
                                    )
and                                 )
                                    )
THE CITY OF COLLEGEDALE, TENNESSEE, )
   Defendants.                      )
------------------------------------------------------------

       The deposition of SERGEANT JAMES DANIEL HEATH, called as a witness at the instance of the plaintiffs, for purposes of discovery, on the 10th day of September, 2020, in the Independence Conference Room of Liberty Tower, 605 Chestnut Street, Chattanooga, Tennessee, taken under the Federal Rules of Civil Procedure, in the presence of:

        BRYAN H. HOSS, ESQUIRE
        JANIE PARKS VARNELL, ESQUIRE
        DAVIS & HOSS, P.C.
        850 FORTWOOD STREET
        CHATTANOOGA, TENNESSEE  37403
        bryan@davis-hoss.com
        janie@davis-hoss.com
          Appearing for the Plaintiffs

        BENJAMIN K. LAUDERBACK, ESQUIRE
        BRIAN BIBB, ESQUIRE
        WATSON, ROACH, BATSON & LAUDERBACK, PLC
        900 SOUTH GAY STREET, SUITE 1600
        POST OFFICE BOX 131
        KNOXVILLE, TENNESSEE  37901-0131
        blauderback@watsonroach.com
        bbibb@watsonroach.com
          Appearing for Chief Brian Hickman



(423) 876-4435          "Preserving The Record"          (800) 298-3376
Lana Y. Ewton, RPR, LCR    Angel & Associates Court Reporting
Case 1:19-cv-00295-CHS   Document 73-1   Filed 11/16/20   Page 1 of 6   PageID #: 335

1  would handle this stuff -- you know, this whole stat thing was
2  stuff whenever I had the opportunity to or whenever I had a
3  small caseload or wasn't busy with other stuff, so it's not
4  like I dedicated a whole bunch of time to that because, again,
5  it was a me thing.  It was never an administration thing.  So
6  I want to say that I saw it and I might have looked at it for
7  a second, told myself I'd go back and look at it again later
8  so maybe I could add to a conversation if it was ever had, but
9  I don't think I ever did and I don't think the conversation
10 was ever had.
11      Q    **Any other conversations with Curtis that you can**
12 **recall about the quota or the enforcement activities number?**
13      A    Well, yeah.  We had a conversation with Curtis at --
14 at Lieutenant Sapp's house, but we were just kind of throwing
15 this stuff out there, seeing -- seeing what, you know --
16 seeing what's good, what's not good, that kind of stuff.  That
17 was -- I know a lawsuit had been dropped at that point.  I'm
18 not sure which one had been dropped.
19      Q    **You mean filed?**
20      A    Yes, sir, that's what I mean to say.  Thank you.
21 That's one of those words you don't like.  But --
22           MR. GRANT:  Dropped.  When a lawsuit gets dropped --
23           THE WITNESS:  Yes, I know.
24           MR. GRANT:  -- for a lawyer, it's -- yeah.  They
25 don't like that.

1  Q  No, they like that.
2  A  Yes. I know.
3  Q  We don't.
4  A  I recall us having that meeting and going over pros and cons of, you know, everything that we're talking about today.
7  Q  So this is at Lieutenant Sapp's house?
8  A  Correct.
9  Q  And who all was there?
10 A  It was myself, Lieutenant Sapp, Sergeant Westfield, and Curtis Bowe.
12 Q  Okay. And any idea what month, what year?
13 A  Like I said, I know it was around the time of the lawsuit. I just can't recall which lawsuit it was. Because one -- one was filed in the summer and one was filed in the spring; right? I can't remember.
17 Q  Bedell was filed first.
18 A  Yes.
19 Q  And then Shilling, Duckett --
20 A  Second.
21 Q  -- and Holloway's was filed second.
22 A  Correct.
23 Q  So you think it was in between the time that those two lawsuits were filed?
25 A  I think, but I can't recall.

1    Q    That's your best guess?
2    A    That's my best guess.
3    Q    All right. And that discussion is -- tell me about
4  that discussion again.
5    A    Well, that's the thing that I'm kind of wondering
6  about, because that was one of the things that -- Lieutenant
7  Sapp had asked him if it was protected by attorney/client,
8  but -- and he said it was.
9    Q    Asked Curtis?
10   A    Yes.
11   Q    And Curtis says it was?
12   A    Yeah. So I'm not sure what I'm allowed to do or
13 not.
14   Q    Oh, you're not sure whether --
15   A    Yeah. Is it protected? I don't --
16        MR. BIBB: Maybe we should give Curtis a call.
17        MR. LAUDERBACK: On the record.
18        MR. GRANT: Yeah. Off the record for a second.
19        (Whereupon, a discussion was held off the record.)
20   Q    So this is after hours?
21   A    Yes.
22   Q    Nobody was on duty?
23   A    No. We were at his -- we were at Lieutenant Sapp's
24 house.
25   Q    But nobody is on duty --

1    A    No.

2    Q    -- at that time?

3    A    I mean, I might have been on call, but as far as
4    actively working, no.

5    Q    Okay. And the general conversation is about the --
6    whether this was a quota?

7    A    Uh-huh.

8    Q    Is that fair to say?

9    A    Yeah.

10   Q    Whether it was an illegal quota?

11   A    Uh-huh.

12   Q    Is that fair?

13   A    Uh-huh. Yes, sir. I'm sorry. I'm doing the uh-huh
14   again. Working on it.

15            MR. GRANT: Let me, just for the record, just say
16   that if you were talking to Mr. Bowe in the capacity as a city
17   employee asking for legal advice on behalf of the City, then I
18   think that's privileged --

19            THE WITNESS: Okay.

20            MR. GRANT: -- and I would advise you not to answer.
21   If you were not talking to him in that capacity, then it's
22   your call.

23            THE WITNESS: Yeah, I wasn't asking him any personal
24   stuff.

25   Q    So you were asking on behalf of the City?

```
 1      A    Yeah, it was --
 2      Q    Well, it sounds like it was Sapp's question.
 3      A    Correct.  So -- Jack -- Jack was -- you know,
 4  that -- the lawsuit was filed and it was just one of those
 5  things, just like court before we, you know, prosecute a DUI
 6  or something.  Making sure our Is are dotted, our Ts are
 7  crossed, all that stuff.  So he hollered at me to come by his
 8  house and let's talk it over, make sure that, you know -- make
 9  sure we've done everything we're supposed to do.  But, you
10  know, there is also parts where, you know, Westfield had a
11  hand in it that I didn't and vice versa, so he called
12  Westfield over.  And so that was going around and then we're
13  like, well, hold on.  Let's get Curtis' opinion.  He is an
14  attorney and, you know, really, you know, just make sure that
15  we've done all this.  So he says I'll be right there and he
16  shows up and that was the -- one of the first questions that
17  Lieutenant Sapp threw out there, look, this is sensitive
18  department stuff and definitely above his chain of command
19  because he is a reserve officer at this point, so we are
20  talking to you not as a reserve officer but as an attorney to
21  get your knowledge.
22      Q    And this was all before you guys gave your TBI
23  interview?
24      A    When did we give the TBI interview?
25      Q    I've got August 28th.  I've got your -- your date
```